# In the
# United States Bankruptcy Court
### For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**ANTHONY ROLDAN AND**<br>**MARLEEN ROLDAN**,<br><br>DEBTORS. | CASE NO. 18-BK-18593<br>EASTERN DIVISION<br>CHAPTER 13<br><br>HON. TIMOTHY A. BARNES<br><br>HEARING DATE: OCT. 11, 2018<br>HEARING TIME: 11:00 A.M.<br><br>**ORAL ARGUMENT REQUESTED** |

# CITY OF CHICAGO'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS

**Edward N. Siskel**
Corporation Counsel

David Paul Holtkamp (IL 6298815)
Assistant Corporation Counsel Supervisor
**CITY OF CHICAGO, DEPARTMENT OF LAW**
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel: (312) 744-6967
Email: David.Holtkamp2@cityofchicago.org

# INTRODUCTION

The City readily admits that it made a mistake in this case. The City had notice of the Debtors' chapter 13 case and then mistakenly disposed of a vehicle of one of the Debtors. The only real dispute here then is what the Debtors are entitled to under the Bankruptcy Code for the City's mistake. The Debtors assert they are entitled to $10,000 in punitive damages, their attorneys' fees at $450 per hour and an affirmative judgment against the City for $6,221.00 for the asserted value of the car. But the Debtors already asserted under oath in their schedules that the vehicle was only worth $4,659, and in any event the Debtors' argument fails to recognize that the City is a governmental unit under § 106 of the Bankruptcy Code.

First, a governmental unit is expressly defined as including a "municipality," which the City indisputably is. *See* 11 U.S.C. § 101(27). Therefore, while this court may issue an award against the City, including a "judgment awarding a money recovery," it may not issue an "award of punitive damages" against the City. *See* 11 U.S.C. § 106(a)(3). Congress very clearly and expressly provided special protection for governmental units from being subject to punitive damages when the action is brought under one of the sections found in § 106(a)(1), which a stay violation is. Therefore, while the City did not act egregiously in a way that would warrant punitive damages, that question is preempted by the express prohibition in the Code against such damages.

Next, the Debtors also fail to recognize that any award for a viola-

tion of the stay must first be offset against the City's claim before it can be required to pay out of pocket. Section 106(c) provides that a claim against a governmental unit must be offset against that governmental unit's claim before any affirmative payment may be ordered. The City's claim is over $13,000, which is not in dispute, and therefore the Debtors are only entitled to have that amount decreased in the amount of the Debtors' actual damages and attorneys' fees. The City has agreed to do so.

Finally, the amount of attorney's fees that may be charged against the City are capped at the rate set by 28 U.S.C. 2412(d)(2)(A). *See* 11 U.S.C.§ 106(a)(3). That rate is $125 per hour, far less than the $450 per hour the Debtors' attorney here requests. *See* 28 U.S.C. 2412(d)(2)(A). The attorney has provided evidence of 5.5 hours of work, which at $125 per hour totals $687.50. The claim for this amount is an asset of the estate, and not personal to the attorney, and so must also be offset against the City's claim.

Therefore, the City agrees that the Debtors are entitled to a reduction in their claim in the amount of $4,659 for the value of the vehicle and $687.50 for attorney time, for a total reduction of $5,346.50 for the City's mistake. That is what the Debtors are entitled to and what this Court should order.

# FACTS

Prior to the petition date, the Debtors violated the City's Municipal Code with respect to parking, standing, compliance, and automated traffic enforcement a total of 70 times without paying the fines. *See*

2

SoF, ¶¶ 3, 23.[1] Due to these violations, the City impounded the Debtor's 2005 Infinity on or about June 14, 2018. *See id* at ¶ 3. The total due to the City for these violations as of the petition date was $13,349.40. *See id* at ¶ 24.

The Debtors filed a joint bankruptcy petition under chapter 13 of the Bankruptcy Code on June 29, 2018. *See id* at ¶ 1. The City had notice of the bankruptcy no later than June 29, 2018. *See id* at ¶ 16. The City filed an unsecured proof of claim on July 3, 2018, because it mistakenly failed to recognize that it was holding the Debtor's vehicle in its auto pound. *See id* at ¶ 30. On or about July 11, 2018, the City mistakenly disposed of the Debtor's vehicle. *See id* at ¶ 16.

When the Debtors filed their petition for bankruptcy they listed the vehicle in Schedule A/B and provided the value as $4,659. *See id* at ¶ 25. That value was given under oath. *See id* at ¶ 26. The Debtors filed an amended plan that provides for the City's claim to be paid as secured in equal monthly installments. *See id* at ¶ 27. Upon confirmation of a plan providing such treatment, the City will generally authorize release of the vehicle. *See id* at ¶ 10.

The Debtors' plan was confirmed on August 16, 2018. *See id* at ¶ 12. On that same day the Debtors' attorney contacted the City's outside counsel about obtaining release of the vehicle. *See id* at ¶ 14. On or about August 22, 2018, the City's outside counsel informed the Debtors' attorney that the City had disposed of the vehicle because it mistakenly did not associate that vehicle with the Debtors. *See id* at ¶ 15.

---

[1] The City's Statement of Facts ("SoF"), has been filed separately contemporaneously with this Response.

The Debtors now seek sanctions for violation of the automatic stay for that disposal.

# ARGUMENT

### 1. Punitive Damages are not allowed against a governmental unit for a stay violation.

The Debtors here have asserted that the City's conduct in mistakenly disposing of their vehicle during this case warrants punitive damages of $10,000. While a mistake certainly does not warrant punitive damages, Congress has expressly forbidden the court from issuing a judgment of punitive damages against any governmental unit for a stay violation. Section 106(a)(3) provides, with respect to any action brought under one of the provisions listed in § 106(a) (including § 362), that "[t]he court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, ***but not including an award of punitive damages***." 11 U.S.C. § 106(a)(3) (emphasis added). In turn, section 101(27) defines governmental unit as including any municipality. *See* 11 U.S.C. § 101(27). The purpose of this express prohibition is easy to understand:

> This limitation on recovery is similar to the limitation on the waiver of the federal government's sovereign immunity in the Federal Tort Claims Act and ***is consistent with traditional rules prohibiting the recovery of punitive damages from municipalities*** that are otherwise subject to suit. As the Supreme Court has explained with respect to municipalities, but with reasoning which is equally applicable to other governmental units, "an award

> of punitive damages … 'punishes' only the taxpayers, who took no part in the commission of the tort … [and is] in effect a windfall to a fully compensated plaintiff… . Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers."

S. Elizabeth Gibson, *Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311, 331-32 (1995) (emphasis added).

The courts agree that the language of § 106(a)(3) is clear and unequivocally bars punitive damages against a governmental unit for a stay violation. *See In re Flynn,* 185 B.R. 89, 93 (S.D. Ga. 1995); *In re Griffin*, 415 B.R. 64, 71 (Bankr. N.D.N.Y. 2009); *In re Davis*, 201 B.R. 835, 837-38 (Bankr. S.D. Ala. 1996); *In re Duby*, 451 B.R. 664, 678 (B.A.P. 1st Cir. 2011). This prohibition extends to counties, *see Rosas v. Monroe Cty. Tax Claim Bureau*, 323 B.R. 893, 902 (Bankr. M.D. Pa. 2004), and even cities that mistakenly enforce parking and traffic laws in violations of the stay, *see In re Odom,* 571 B.R. 687, 698 (Bankr. E.D. Pa. 2017); *In re Quiles Aviles*, 532 B.R. 428, 440 (Bankr. D.P.R. 2015).

The Debtors, therefore, cannot be granted punitive damages against the City. That is expressly prohibited.[2]

---

[2] Even if punitive damages were not expressly prohibited, they would not be warranted. "[A] punitive damage award is appropriate in certain cases to punish a wrongdoer for outrageous conduct[.] *In re Ludkowski*, 587 B.R. 330, 346 (Bankr. N.D. Ill. 2018) *citing Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1352 (7th Cir. 1995). There is no assertion that the City did anything other than make a mistake.

5

### 2. Actual Damages under § 362(k) must be offset against the City's claim.

The Debtors also seek a money judgment against the City that would require the City to pay out of pocket for the actual damages they have sustained under § 362(k). However, § 106 again requires that the City, as a governmental unit, be treated a bit differently. Section 106(c) provides that whether or not sovereign immunity is asserted, "there ***shall be offset*** against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." 11 U.S.C. § 106(c). Again the City is a governmental unit.

Additionally, a claim for a stay violation, including attorney's fees under § 362(k), is property of the estate, and not of the debtor or the attorney. *See In re Price*, 42 F.3d 1068, 1072 (7th Cir. 1994) (A "claim for attorneys' fees and costs [under 362(k)] is considered property of the estate."), *citing United States v. McPeck*, 910 F.2d 509, 513 (8th Cir. 1990). Therefore, section 106(c) applies.

The requirements for setoff under 106(c) are also mandatory. As the Eighth Circuit explained in *McPeck*:

> Section 106[c] states that any claim against a governmental unit that is property of the estate "*shall be offset*" against an allowed claim or interest of the governmental unit. This ***mandatory language*** comports with the established principle that an award to a plaintiff on a claim is ordinarily offset against an award to the defendant on a counterclaim; a single judgment is entered for the excess, if any. Thus, the tax claim established by the IRS must initially be offset by the counterclaim of the estate. A contrary rule would not only violate the language of § 106(b), but would contravene general principles of equity by requiring the governmental unit to pay the award to the

6

>debtor while being forced to attempt to recover its own claim through bankruptcy.

*McPeck*, 910 F.2d at 512-13. Therefore, the Court held, an affirmative monetary award for stay violations may only be imposed against a governmental unit after the government's total claim has been exhausted. *See id*. The language of § 106 is again clear. "[I]n cases in which a debtor seeks monetary relief, affirmative recovery under subsection (a) refers to the amount of the recovery that exceeds the government's allowed claim against the debtor. The debtor is entitled to a single judgment for the excess, if any, of his claim above the government's allowed claim in the bankruptcy proceeding." *Davis v. I.R.S.*, 136 B.R. 414, 421 (E.D. Va. 1992).

The Debtors' claim for a stay violation "shall be offset against [the] claim or interest of the governmental unit[.]" 11 U.S.C. § 106(c). The City filed a claim, which has not been challenged, in excess of $13,000 and therefore the stay violations damages must be offset against that claim. No affirmative recovery is permitted.

### 3. Attorney's fees are capped at $125 per hour.

The Debtors here have also request attorney's fees under § 362(k). The problem again is not that the Debtors are not entitled to relief, it is the relief they request is not available to them, per § 106. Section 106(a) provides that a judgment imposed against a governmental unit for a violation of the stay "shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28." 11 U.S.C. § 106(a)(3). This means the attorney's fees that may be awarded against a governmental unit are subject to the hourly rate cap in 28 U.S.C.

7

§ 2412(d)(2)(A). *See In re Price,* 42 F.3d at 1074. Under that section, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.A. § 2412(d)(2)(A). The Debtors' have provided no evidence that a higher fee is warranted here, and therefore, the amount is capped at $125 per hour.

### 4. The Debtors' sworn statements about the value of the vehicle should be binding.

The Debtors asserted in their sworn schedules that the vehicle at issue here was worth $4,659.00. *See* SoF ¶¶ 25, 26. The Debtors also listed that as the value of the vehicle as collateral for the City in their confirmed plan. *See* SoF ¶ 27. Now that they are looking at damages against the City, the value of that same vehicle jumped to $6,221.00, an increase of over 25%. The Debtors should not be allowed to change the value of their car depending upon what they are trying to accomplish.

"Generally, factual assertions in pleadings … are judicial admissions against the party that made them. Specifically, statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *Larson v. Groos Bank NA*, 204 B.R. 500, 502 (W.D. Tex. 1996). "By executing the numerous Schedules that [they] filed under penalty of perjury … the Debtor[s] represented to this Court that these values were accurate; therefore, [they are] estopped from denying their accu-

8

racy." *In re Sissom*, 366 B.R. 677, 697 (Bankr. S.D. Tex. 2007). As a matter of law, the Debtors cannot deny the values which they included in their schedules. *Id.* at 695 n.27. The Debtors "may not adopt a cavalier attitude toward the accuracy of [their] schedules by arguing that they are not precise and correct." *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001).

> The Seventh Circuit has stated,
>
>> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are not evidence at all but rather have the effect of withdrawing a fact from contention. A judicial admission is conclusive, unless the court allows it to be withdrawn[.]

*Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (citations and internal quotes omitted). So, the Debtor's assertion in her schedules, that the value of her car was $4,659 constitutes a judicial admission of the value of the car, and cannot be controverted. The rationale for this treatment was discussed by the court in *Presta v. Charles Schwab Bank N.A. (In re Presta)*, 2014 WL 2448444 (Bankr. M.D. Fla. 2014, May 28, 2014), a case with parallels to this one:

> "The success of our bankruptcy laws requires a debtor's full and honest disclosure." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir.2002). "Judicial estoppel is applied to the calculated assertion of divergent sworn positions [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir.1983). "[J]udicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." *Burnes,* 291 F.3d at

9

> 1286 (citing *Am. Nat'l,* 710 F.2d at 1536). The Court finds that judicial estoppel applies in the instant case. On his bankruptcy schedules, which he signed under oath, Plaintiff valued the Property at $254,000.00. At that time, Plaintiff had no reason to inflate the value of the Property. Five years later and armed with an obvious motive, Plaintiff seeks to value the Property at an amount that is more than $60,000.00 less than what he valued it at in his schedules. The Court finds that such conduct amounts to intentional manipulation and would "mak[e] a mockery of justice." *Am. Nat'l,* 710 F.2d at 1536. Accordingly, Plaintiff is judicially estopped from now asserting that the Property should be valued at an amount less than $254,000.00.

*Presta* at *2 (footnote omitted).

Here, as in *Presta*, the Debtors under oath gave one valuation of their vehicle; subsequently, "armed with an obvious motive," they attempt to drastically change that value. In this case, as in *Presta*, their conduct amounts to "intentional manipulation" and to allow it would "make a mockery of justice."

"[O]rdinarily the owner of property is competent to testify to its value," *In re Martin-Trigona,* 760 F.2d 1334, 1344 (2d Cir. 1985), and, while not determinative, it should be noted that the value claimed in the Debtors' schedule is a reasonable value for a thirteen-year-old Infiniti SUV in less-than-pristine condition. The Debtors are bound by their sworn declaration in their Schedule A/B, and are not entitled to the inflated amount sought in their sanctions motion. The Debtors said under oath that their vehicle was worth $4,659, and the City, every other creditor, and the trustee relied on that number. No one objected to that number and now it is part of the confirmed plan. The Debtors

10

must live with that number now.

## 5. Oral Argument.

In accordance with paragraph 4 of the Court's scheduling order of August 30, 2018 [Dkt. No. 22], the City requests oral argument on this contested matter.

## 6. Conclusion.

The City agrees that it made a mistake, but under the Bankruptcy Code, the Debtors are entitled to a setoff against the City's claim in the amount of $4,659 for the value of the vehicle and $687.50 for attorney time, for a total reduction of $5,346.50. The Court should enter an order accordingly.

| | |
|---|---|
| DATED: SEPTEMBER 27, 2018 | RESPECTFULLY SUBMITTED, |
| | **THE CITY OF CHICAGO** |
| | Edward N. Siskel<br>Corporation Counsel |
| | By: /s/ David Paul Holtkamp<br>Senior Counsel |

David P. Holtkamp (6298815)
Senior Counsel
**CITY OF CHICAGO, DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel:   (312) 744-6967
Email: David.Holtkamp2@cityofchicago.org

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, hereby certify that on September 27, 2018, I caused a copy of the Response to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List and by U.S. Mail to Non-registrants as provided.

/s/ David P. Holtkamp

## SERVICE LIST

**Registrants**
(Via CM/ECF)

- **Jason Blust**   jason.blust@clientfirstbankruptcy.com, courtemail@clientfirstbankruptcy.com;r45359@notify.bestcase.com
- **Patrick S Layng**   USTPRegion11.ES.ECF@usdoj.gov
- **Marilyn O Marshall**   courtdocs@chi13.com
- **D Anthony Sottile**   bankruptcy@sottileandbarile.com